# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

MITCHELL E. HARPER,

     Plaintiff(s),

v.

NEVADA PROPERTY 1, LLC,

     Defendant(s).

Case No. 2:19-cv-02069-GMN-VCF

**ORDERS**

[Docket Nos. 40, 41, 64]

**REPORT AND RECOMMENDATION**

[Docket No. 41]

     Pending before the Court is Defendant's motion to enforce settlement and for sanctions. Docket No. 41. Plaintiff filed a response and Defendant filed a reply. Docket Nos. 44, 47. The Court held an evidentiary hearing on the motion. *See* Docket No. 62; *see also* Docket No. 70 (transcript). Following that hearing, Defendant filed paperwork evidencing the fees for which it seeks recovery. Docket No. 64. Plaintiff filed a response and Defendant filed a reply. Docket Nos. 65, 66. Also pending before the Court is a motion to seal. Docket No. 40. The parties filed subsequent documents under seal and the Court ordered them to make a proper showing for each document. Docket No. 57. The parties filed a joint supplement. Docket No. 59. The motion to seal is properly resolved without a hearing. *See* Local Rule 78-1.

     For the reasons discussed more fully below, the Court issues orders (1) **GRANTING** in part and **DENYING** in part Defendant's motion for sanctions and (2) **GRANTING** in part and **DENYING** in part the motion to seal. The undersigned also **RECOMMENDS** that Defendant's motion to enforce settlement be **GRANTED**.[1]

---

[1] Awarding attorneys' fees and resolving a motion to seal are non-dispositive matters, so orders are issued resolving those motions. *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 240 (9th Cir. 1991); *Roberts v. Clark Cnty. Sch. Dist.*, No. 2:15-cv-00388-JAD-PAL, 2016 WL 1611587, at *1 (D. Nev. Apr. 21, 2016). Granting a motion to enforce settlement is a dispositive matter, so a report and recommendation is issued addressing that motion. *Boskoff v. Yano*, 217 F. Supp. 2d 1077, 1084 n.4 (D. Haw. 2001).

# I.    BACKGROUND

On December 3, 2019, this case was assigned to the Early Neutral Evaluation Program and the undersigned was assigned to the case as the settlement judge.  Docket No. 2.[2]  Upon Defendant's appearance a few months later, the undersigned set the early neutral evaluation.  Docket No. 11.  The early neutral evaluation was continued twice, Docket Nos. 17, 22, and was eventually held on September 10, 2020, Docket No. 29.  After roughly three hours at the early neutral evaluation, a settlement was placed on the record that included the material terms of "confidentiality" and "no admission of any liability or wrongdoing."  *See* Docket Nos. 29, 39.[3]

The Court ordered the parties to file dismissal papers by October 8, 2020.  Docket No. 29.  On October 8, 2020, Defendant filed a motion to extend that deadline as the written settlement agreement had not yet been executed.  *See* Docket No. 31.  The Court granted the motion to extend.  Docket No. 32.  On November 4, 2020, Defendant filed a status report indicating that defense counsel had been advised that "Plaintiff has some concerns about the agreement which counsel is trying to resolve, but resolution has been complicated by some communication difficulties between Plaintiff and his counsel."  Docket No. 34.  The Court again extended the deadline to file dismissal papers.  Docket No. 35.

On November 12, 2020, Plaintiff's counsel sent an email to defense counsel indicating that she had "spoken with [Plaintiff] at length.  He no longer wants to settle.  I explained the possible outcomes of that decision (including that you'd likely file a Motion to Enforce), and he's adamant that he does not want to settle and will not sign the agreement."  Evid. Hrg. Def. Ex. 8 at 4 (NVP1-0067).  That same day, Plaintiff's counsel made similar representations in a joint status report:

> On September 10, 2020[,] the parties reached a confidential resolution of the above-referenced matter. . . . A written document memorializing the parties' agreement has been exchanged; however,

---

[2] The magistrate judge who presides over an early neutral evaluation is not the magistrate judge assigned to the case for general purposes.  *Gfeller v. Doyne Med. Clinic, Inc.*, No. 2:14-cv-01940-JCM-VCF, 2015 WL 5210392, at *8 (D. Nev. Sept. 3, 2015).  The magistrate judge overseeing the early neutral evaluation has the authority to resolve disputes arising therefrom.  *Id.*

[3] As discussed in Section II, the Court will not keep secret the confidentiality, non-disparagement, and non-admission terms, but will keep secret the other aspects of the parties' settlement agreement.

2

> Plaintiff has told his counsel that despite having agreed to resolve this matter and confirmed the key terms of the agreement on the record with the Court, he no longer wishes to settle.

Docket No. 36 at 1. Hence, Plaintiff's counsel unequivocally represented that a binding settlement had been reached but that Plaintiff no longer wished to settle.

The parties' status report also asked the Court to schedule a "status conference and require Mr. Harper's participation." *Id.* at 2. The Court declined to set that status conference that appeared aimed at having the Court explain the law to Plaintiff, which is the job of his attorney. *See* Docket No. 37 at 1 n.1. Instead, the Court instructed Plaintiff's counsel to address with her client the binding legal authority that appeared to govern the scenario being described. *See id.* (citing *Doi v. Halekulani Corp.*, 276 F.3d 1131, 1137-38 (9th Cir. 2002)). To facilitate those discussions, the Court again extended the deadline to file dismissal papers. *Id.*

Plaintiff continued to refuse to sign the settlement agreement. As a result, Defendant filed the motion to enforce settlement and for sanctions that is now before the Court. Docket No. 40.[4] Plaintiff's response to the motion did not include evidentiary support, in the form of a declaration or otherwise, for the representations being made in that brief. As such, the Court ordered Plaintiff to file a proper declaration attesting to those representations. Docket No. 48.[5] Plaintiff responded by filing a rambling, evasive, and generally non-responsive "written statement" that did not comply with 28 U.S.C. § 1746. Docket No. 52. The Court again ordered Plaintiff to file a statute-compliant declaration that directly addressed the representations made in the responsive brief. Docket No. 53. Plaintiff then filed a declaration. Docket No. 55.

On April 9, 2021, the Court held an evidentiary hearing on the matter. Docket No. 62.

## II.   MOTION TO SEAL

Before addressing the substance of the parties' dispute, the Court begins with the administrative matter of determining which (if any) aspects of the judicial record should remain

---

[4] The Court provided another off-ramp for Plaintiff, "strongly encourag[ing]" the parties to resolve the dispute without the need for formal resolution of the motion to enforce and for sanctions. Docket No. 48 at 2. The resulting conferral efforts were not fruitful. Docket No. 49.

[5] The Court also ordered defense counsel to file a declaration attesting to certain representations made in reply. Docket No. 48 at 2. Defense counsel did so. Docket No. 50.

secret from the public.  In conjunction with the motion to enforce and for sanctions, Defendant filed a motion to seal.  Docket No. 40; *see also* Docket No. 41 (sealed motion with exhibits).  In addition, the parties made several further filings under seal without an accompanying motion to seal.  Docket Nos. 44 (responsive brief and exhibit), 47 (reply brief), 49 (notice of meet and confer), 50 (supplemental declaration), 51 (certificate of service), 52 (supplemental written statement), 54 (certificate of service), 55 (supplemental declaration and certificate of service).  The Court ordered a supplement from the parties, Docket No. 57, which they filed along with proposed redactions, Docket No. 59.

### A.   Standards

There is a strong presumption of public access to judicial records.  *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006).  A party seeking to file documents under seal bears the burden of overcoming that presumption.  *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010).

The standard applicable to a motion to seal turns on whether the underlying materials are submitted in conjunction with a dispositive or a non-dispositive motion.   Whether a motion is "dispositive" turns on "whether the motion at issue is more than tangentially related to the merits of a case."  *Center for Auto Safety v. Chrysler Group, LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016).  The parties assert in this case that the motion to enforce settlement should be considered "dispositive" for purposes of their sealing request.  *See* Docket No. 59 at 2.[6]  The Court agrees that the motion to enforce is properly treated as being dispositive in nature.

---

[6] Although case law within the Ninth Circuit is not uniform, there is ample authority as to the dispositive nature of a motion to enforce settlement.  *See, e.g.*, *Helix Environmental Planning, Inc. v. Helix Environmental & Strategic Sols.*, No. 3:18-cv-02000-AJB-AHG, 2021 WL 120829, at *1 (S.D. Cal. Jan. 13, 2021); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2020 WL 2425792, at *4 (N.D. Cal. May 12, 2020); *Wells Fargo Bank, N.A. v. Saticoy Bay LLC Series 3948 Applecrest*, No. 2:17-cv-01360-APG-VCF, 2020 WL 2311560, at *2 (D. Nev. Apr. 23, 2020); *Blain v. Titanium Metals Corp.*, No. 2:18-cv-00462-APG-NJK, 2019 WL 1207929, at *1-2 (D. Nev. Mar. 14, 2019); *WatchGuard Techs., Inc. v. iValue Infosolutions Pvt. Ltd.*, No. C15-1697-BAT, 2017 WL 3581624, at *1 (W.D. Wash. Aug. 18, 2017); *Doud v. Yellow Cab of Reno, Inc.*, No. 3:13-cv-00664-WGC, 2015 WL 13706049, at *1 (D. Nev. June 11, 2015); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, No. CV 09-02094 MMM (AGRx), 2010 WL 11523739, at *1 (C.D. Cal. July 14, 2010).

4

Parties "who seek to maintain the secrecy of documents attached to dispositive motions must meet the high threshold of showing that 'compelling reasons' support secrecy." *Kamakana*, 447 F.3d at 1180.  The Ninth Circuit has indicated that "'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements, or release trade secrets.'" *Id.* at 1179 (quoting *Nixon v. Warner Commc'ns Inc.*, 435 U.S. 589, 598 (1978)).  "The mere fact that the production of records may lead to a litigant's embarrassment, incrimination, or exposure to further litigation will not, without more, compel the court to seal its records." *Id.*

The burden to show compelling reasons is not met by conclusory assertions; rather, the movant must "articulate compelling reasons supported by specific factual findings." *Id.* at 1178. For example, the Ninth Circuit has rejected efforts to seal documents under the "compelling reasons" standard based on "conclusory statements about the contents of the documents–that they are confidential and that, in general," their disclosure would be harmful to the movant. *Id.* at 1182. Such "conclusory offerings do not rise to the level of 'compelling reasons' sufficiently specific to bar the public access to the documents." *Id*.  In allowing the sealing of a document, the Court must "articulate the basis for its ruling, without relying on hypothesis and conjecture." *See, e.g.*, *Pintos*, 605 F.3d at 679 (quoting *Hagestad v. Tragesser*, 49 F.3d 1430, 1434 (9th Cir. 1995)).

Any request to seal must also be "narrowly tailored" to remove from the public sphere only material that warrants secrecy. *E.g.*, *Ervine v. Warden*, 214 F. Supp. 3d 917, 919 (E.D. Cal. 2016) (citing *Press-Enterp. Co. v. Superior Court*, 464 U.S. 501, 513 (1984)).  To the extent any confidential information can be easily redacted while leaving meaningful information available to the public, the Court must order that redacted versions be filed rather than sealing entire documents. *See Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003); *see also in re Roman Catholic Archbishop of Portland in Ore.*, 661 F.3d 417, 425 (9th Cir. 2011).

### B.   Analysis

The Court begins with the parties' acknowledgment that some filings do not warrant secrecy.  Docket No. 59 at 3.  The Court will unseal the documents at Docket Nos. 49, 51, and 54.

The remaining aspects of the parties' sealing requests hinge on the proposition that settlement discussions, the early neutral evaluation process, and the terms of the settlement agreement warrant continued secrecy based on their nature and the fact that the settlement agreement has a confidentiality provision. *See* Docket No. 59 at 2-3. The competing considerations make clear that the parties' position cuts too broadly.

"[T]he mere fact that the parties' settlement agreement may contain a confidentiality provision, without more, does not constitute a compelling reason to seal the information." *Helix Environmental*, 2021 WL 120829, at *1; *see also FTC v. AMG Servs.*, No. 2:12-cv-00536-GMN-VCF, 2020 U.S. Dist. Lexis 232231, at *5 (D. Nev. Dec. 10, 2020) ("the confidentiality of the settlement agreement alone does not provide a compelling reason to seal"). That is particularly true in the context of a motion to enforce settlement, as the local rules put the parties on notice that the Court may order the disclosure of otherwise confidential information as part of the resolution of that motion. *See* Local Rule 16-5. The logic behind this approach is clear: although parties to a confidential settlement agreement may prefer to keep its terms secret, "once they turn to the federal court to resolve their disputes . . . the public administration of justice demands transparency." *Avocados Plus Inc. v. Freska Produce Int'l LLC*, No. 2:19-cv-06451-RGK-JC, 2019 WL 12345580, at *2 (C.D. Cal. Oct. 8, 2019) (quoting *Polaris Innovations Ltd. v. Kingston Tech. Co.*, No. SA CV 16-00300-CJC(RAOx), 2017 WL 2806897, at *7 (C.D. Cal. Mar. 30, 2017)).[7] At the same time, courts recognize the general benefits of keeping settlement discussions and settlements confidential when feasible. *See, e.g.*, *U.S. E.E.O.C. v. ABM Indus. Inc.*, No. 1:07-cv-01428 LJO JLT, 2010 WL 582049, at *2 (E.D. Cal. Feb. 12, 2010) ("Confidentiality of the mediation process encourages settlement" (citing *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 858 (2d Cir. 1998)). Moreover and as particularly apt to this case, courts are loath to reward gamesmanship whereby a litigant seeking to challenge a confidentiality provision can

---

[7] The motion to seal notes that the Court previously allowed for secrecy, including sealing the recitation of the settlement terms on the record. Docket No. 59 at 3. At that time, however, there was no live dispute between the parties requiring judicial decision-making. Seeking judicial relief by filing a motion to enforce shifts the consideration of the pertinent factors. *See, e.g.*, Local Rule 16-5 ("The court's ADR process is confidential . . . [but,] [i]n the event of a dispute to enforce a settlement agreement, the court may order the disclosure of confidential information").

defeat such confidentiality simply by requiring the filing of a motion to enforce. *Cf. Saticoy Bay*, 2020 WL 2311560, at *2 (noting that "[i]f Saticoy had not acted in bad faith and signed the settlement agreement, then the settlement amounts and negotiations would have remained confidential"). In addition, courts must balance the parties' need for secrecy against the public's interests in transparency, including its interest in "understanding the judicial process." *Pintos*, 605 F.3d at 679 & n.6.

Given all of these considerations, some courts have taken a middle approach in the context of a motion to enforce a settlement whereby the terms of settlement pertinent to analyzing the motion to enforce will not be kept secret, but the terms that are irrelevant to the motion to enforce will be kept secret. *See United States ex rel. Lesnik v. Eisenmann SE*, No. 16-cv-01120-LHK, 2021 WL 2092944, at *3 (N.D. Cal. May 11, 2021); *see also Pizza v. Fin. Indus. Regul. Auth., Inc.*, No. 13-cv-0688 MMC (NC), 2015 WL 1383142, at *2 (N.D. Cal. Mar. 19, 2015). The Court finds here that such an approach provides the proper balance of the competing interests at play.[8] On the one hand, it would be unfair for Defendant to be deprived of the benefit of its bargain (which includes confidentiality) simply because Plaintiff now challenges that very provision in the settlement agreement, which prompted Defendant to file a motion to enforce. Moreover, various aspects of the settlement agreement (including the amount of settlement) have no bearing on the outcome of the motion to enforce, so keeping those aspects of the settlement secret does not hinder the public's understanding of the proceedings. On the other hand, the parties have come to the Court with a dispute as to the settlement agreement, which heightens the need for transparency. Moreover, the very existence of a motion to seal makes clear that the settlement agreement includes a confidentiality provision, and the inclusion of confidentiality, non-disparagement, and non-admission provisions are standard practice for settlement agreements for employment cases in this District. *See, e.g.*, Docket No. 50 at ¶ 9. As such, the need for secrecy as to these three provisions is limited. In light of the above, the Court will not allow redaction related to the confidentiality,

---

[8] The court in *Lesnik* determined that the lower "good cause" standard applies to materials filed in conjunction with a motion to enforce settlement. 2021 WL 2092944, at *2. Nonetheless, the Court finds the overall approach adopted in *Lesnik* should also apply to a motion to enforce settlement analyzed in this case under the "compelling reasons" standard.

1 non-disparagement, and non-admission provisions, but will allow redaction related to the other

2 aspects of the parties' settlement.

3       Accordingly, the motion to seal is granted in part and denied in part.  References and

4 discussion of the confidentiality, non-disparagement, and non-admission provisions in the

5 settlement agreement may not be redacted.  References and discussion of all other aspects of the

6 settlement agreement (including the amount of settlement) may be redacted.

7 **III.    MOTION TO ENFORCE SETTLEMENT**

8       Having resolved the administrative sealing matter, the Court turns to Defendant's motion

9 to enforce settlement.  Docket No. 41.  Plaintiff filed a response and Defendant filed a reply.

10 Docket Nos. 44, 47.  The Court held an evidentiary hearing on the motion.  *See* Docket No. 62;

11 *see also* Docket No. 70 (transcript).[9]

12       **A.    <u>Standards</u>**

13       The local rules channel employment cases into an alternative dispute resolution process

14 overseen by a magistrate judge in the hope that the parties can resolve or narrow the nascent cases.

15 Local Rule 16-6.  Employment cases are often very personal in nature.  Parties generally reach a

16 settlement of such cases only when each side is unhappy with the outcome.  A settlement, after all,

17 requires the parties to "settle" on an unideal outcome:

18
19
20
21
> The settlement of any case rarely comes without mixed feelings.  It is a time when parties struggle to let go of their deep-seated belief that with trial will come vindication.  It is also a time when the plaintiff and defendant wonder if they are about to be snookered, either by giving too much or taking too little. . . .  For both [sides], the question ultimately is the same, what will I regret more, settling this case—or not settling it?

22 *Guzik Tech. Enterps., Inc. v. W. Digital Corp.*, No. 5:11-cv-03786-PSG, 2014 WL 12465441, at

23 *1 (N.D. Cal. Mar. 21, 2014).

24

25

26
27
28
---
[9] Plaintiff's positions are scattershot and not always readily discernible.  The Court has considered all arguments presented, but it has not attempted to address every contention raised.  Any argument not explicitly discussed herein has been rejected to the extent it is inconsistent with the rulings rendered.  *See Herndon v. City of Henderson*, 507 F. Supp.3d 1243, 1248 n.8 (D. Nev. 2020) (citing *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 314 n.12 (D. Nev. 2019)).

Settlement agreements are designed to end litigation, not create it. *In re City Equities Anaheim, Ltd.*, 22 F.3d 954, 957 (9th Cir. 1994). Unfortunately, the bittersweetness described above sometimes lingers on the palate, rearing its ugly head in later efforts to unsettle a case or resettle it on different terms. *Guzik Technical*, 2014 WL 12465441, at *1. When such circumstances occur, courts have inherent authority to enforce settlement agreements in pending cases. *See, e.g., City Equities Anaheim*, 22 F.3d at 958. Nevada law requires an offer and acceptance, meeting of the minds, and consideration to constitute an enforceable contract. *May v. Anderson*, 121 Nev. 668, 672 (2005).[10] "A contract can be formed . . . when the parties have agreed to the material terms, even though the contract's exact language is not finalized until later." *Id.* Hence, "it is well-established that an oral agreement is binding on the parties, particularly when the terms are memorialized into the record." *Doi*, 276 F.3d at 1138 (quoting *Sargent v. HHS*, 229 F.3d 1088, 1090 (Fed. Cir. 2002)). Where the parties represent in open court that a settlement was reached and place the terms on the record, courts are empowered to summarily require the parties to comply with those terms. *See id.* at 1139.

"An agreement on the record becomes binding even if a party has a change of heart after she agreed to its terms but before the terms are reduced to writing." *Id.* at 1138 (quoting *in re Christie*, 173 B.R. 890, 891 (E.D. Tex. 1994)). Courts rightfully reject objections to settlement terms raised after agreeing to settle. *Estate of Studnek v. Ambassador of Global Missions UN*, No. CIV-04-0595-PHX-MHM, 2007 WL 9724107, at *3 (D. Ariz. Apr. 11, 2007) (citing *Harrop v. W. Airlines, Inc.*, 550 F.2d 1143, 1144 (9th Cir. 1977)), *recon. denied*, 2007 WL 9724108 (D. Ariz. Aug. 31, 2007). Stated bluntly, "the law does not allow someone to rescind a contract simply because he no longer likes the terms to which he agreed." *Aki v. Univ. of Cal. Lawrence Berkeley Nat'l Lab.*, No. 13-cv-04027, 2015 WL 1778481, at *5 (N.D. Cal. Apr. 17, 2015) (quoting *Page v. Horel*, No. C-09-0289 EMC (pr), 2011 WL 5117562, at *7 (N.D. Cal. Oct. 28, 2011)).

---

[10] Even when a case involves a federal cause of action, the construction and enforcement of settlement agreements are governed by state law. *Jones v. McDaniel*, 717 F.3d 1062, 1067 (9th Cir. 2013).

**B.    Analysis**

Resolution of the motion to enforce settlement is a relatively straightforward endeavor. The parties appeared for an early neutral evaluation, they reached a settlement, and they placed the essential terms of that settlement on the record.  Docket No. 39.  The essential terms placed on the record included confidentiality and non-admission of liability.  *Id.* at 5.  Both Plaintiff himself and his attorney explicitly stated on the record that a settlement was reached with those terms.  *Id.* at 5-6.  Defense counsel then drafted the settlement agreement with the standard confidentiality and non-admission terms that have been approved on numerous occasions by Plaintiff's counsel herself.  Docket No. 50 at ¶ 9.  Nonetheless, Plaintiff urges that there was no settlement agreement because there was no meeting of the minds as to the confidentiality and non-admission terms.  *See* Docket No. 44 at 3-4.[11]  To that end, Plaintiff argues that the terms as written in the draft settlement agreement do not comport with his understanding at the time of the early neutral evaluation.  *See id.*  Plaintiff's argument fails for several reasons.

First, as will be discussed at length below in addressing Defendant's entitlement to sanctions, Plaintiff's testimony as to this purported misunderstanding lacks credibility.  *See* Section IV.B.  Plaintiff's argument fails from the start given the lack of a factual basis.

Second, Plaintiff's position is also directly at odds with governing Ninth Circuit authority. In *Doi*, the Ninth Circuit entertained an argument that two of the settlement terms stated on the record were not correctly transposed into the written agreement.  276 F.3d at 1139.  In particular, the appellant argued that the settlement could not be enforced because the terms stated on the record did not "fully spell[] out" certain provisions in dispute, including confidentiality.  *See id.*

---

[11]  Plaintiff's argument does not fit neatly within a meeting-of-the-minds rubric.  The circumstances are essentially that Plaintiff had a different understanding of these terms than everyone else who attended the early neutral evaluation (including the undersigned).  Indeed, Plaintiff's counsel has not filed a declaration or otherwise indicated that she understood that the terms would be written in any different manner.  Hence, Plaintiff's argument seems akin to asserting a unilateral misinterpretation of the contract terms.  *See, e.g.*, *Aki*, 2015 WL 1778481, at *5 (analyzing argument that the plaintiff understood release term placed on the record differently than stated in written agreement as a unilateral mistake).  An overriding problem for Plaintiff is that a unilateral misunderstanding of the contract terms (even if believed) is not grounds, standing alone, to be released from one's contractual obligations; but rather, some additional showing must be made such as knowledge or fault by the opposing party at the time of contracting.  *E.g.*, *Oh v. Wilson*, 910 P.2d 276, 278 (Nev. 1996).  The record is lacking any such evidence.

The Ninth Circuit flatly rejected that argument.  Most pertinent here, the Ninth Circuit held that the confidentiality term was properly incorporated into the written agreement because it was agreed to in open court subject to further discussion by counsel, the written agreement contained a standard term and there was no evidence of overreaching, and, in any event, the appellant's attorney had stated on the record that the written agreement was consistent with the terms placed on the record.  *Id.* at 1139-40.

*Doi* dooms Plaintiff's position here.  He agreed on the record to confidentiality and Defendant's non-admission of liability.  Docket No. 39 at 5-6.  Counsel drafted the corresponding written terms based on the same standard language used in several other cases by defense counsel and Plaintiff's counsel, Docket No. 50 at ¶ 9, and there is no evidence of overreaching.  These circumstances alone are fatal to Plaintiff's position.  *See Doi*, 276 F.3d at 1139.  As was also the case in *Doi,* however, there is additional ground on which to find a binding settlement agreement based on the representations of Plaintiff's attorney that dispel any contention otherwise:

> Plaintiff has told his counsel that despite having agreed to resolve this matter and confirmed the key terms of the agreement on the record with the Court, he no longer wishes to settle.

Docket No. 36 at 1.  In short, Plaintiff has not shown that the terms of the written agreement prepared by defense counsel were inconsistent with the terms of the agreement made on the record, so the enforcement of settlement is warranted. *See Doi*, 276 F.3d at 1140.

Accordingly, the undersigned recommends that Defendant's motion to enforce settlement be granted.

## IV.    MOTION FOR SANCTIONS

The Court next turns to Defendant's motion for sanctions in the form of attorneys' fees pursuant to the Court's inherent authority.  Docket No. 41 at 5-6.[12]  In particular, Defendant argues that Plaintiff's conduct in refusing to sign the settlement agreement and complete dismissal documents amounts to bad faith that warrants redress.  *Id.*  Plaintiff did not address the request for

---

[12] Defendant has at times referenced a desire to also recover its costs.  *See, e.g.*, Docket No. 64 at 1.  Defendant has not identified any particular costs for which it seeks recovery.  Accordingly, the Court focuses its analysis on attorneys' fees.

sanctions in responding to Defendant's motion.  *See* Docket No. 44.  Nonetheless, the Court provided Plaintiff with notice that it was considering the imposition of sanctions in relation to Defendant's efforts to enforce settlement, so that Plaintiff had an opportunity to address the potential for sanctions at the evidentiary hearing.  *See* Docket No. 56.  Plaintiff also argued against the imposition of sanctions in the post-hearing briefing.  *See* Docket No. 65.

### A. Standards

Holding parties to the terms of executed and valid settlement agreements is critically important, as is deterring such behavior from the outset.  The interests of equity, judicial economy, and finality all militate strongly against efforts to renege on a settlement.  *See, e.g.*, *Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034, 1042 (9th Cir. 2011) (in affirming enforcement of settlement agreement, noting:  "At some point litigation must come to an end.  That point has now been reached"); *Jeff D. v. Andrus*, 899 F.2d 753, 759 (9th Cir. 1989) (enforcing a settlement agreement "has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation").  Particularly given that federal judiciary resources are "strained to the breaking point," courts cannot "countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her."  *Doi*, 276 F.3d at 1141.  "The courts spend enough time on the merits of litigation; we need not (and therefore ought not) open the flood gates to this kind of needless satellite litigation."  *Id.*

Given the importance of these considerations, courts have several arrows in their quiver to address improper efforts to renege on a settlement.  One potent tool is the imposition of sanctions as an exercise of inherent authority.  *Id.* at 1140.  "Federal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'"  *Goodyear Tire & Rubber Co. v. Haeger*, ___ U.S. ____, 137 S.Ct. 1178, 1186 (2017) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).  Such authority enables courts to fashion appropriate sanctions for conduct that abuses the judicial process.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

"Because of their very potency, inherent powers must be exercised with restraint and discretion."  *Id.* at 44.  Sanctions are imposed pursuant to inherent authority only upon a finding

of bad faith or conduct tantamount to bad faith. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1108 (9th Cir. 2002). Sanctionable conduct includes "recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). It is the moving party's burden to demonstrate the party against whom it seeks sanctions acted with the requisite bad faith or improper purpose. *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 285 (N.D. Cal. 2015). Attempts to renege on a valid settlement agreement lend themselves to such a finding, however.[13] The Ninth Circuit has affirmed the imposition of sanctions under inherent authority when the terms of a settlement agreement had been placed on the record, there had been no showing that the written settlement agreement was inconsistent with those terms as stated on the record, and the party attempting to withdraw had refused to sign the written agreement. *Doi*, 276 F.3d at 1141.

If the Court finds it appropriate to impose sanctions under its inherent authority, there are several options available. "[A]n assessment of attorney's fees is undoubtedly within a court's inherent power." *Chambers*, 501 U.S. at 45.[14] Such a sanction "is limited to the fees the innocent

---

[13] *See, e.g., Phillips v. Pilgrim Creek Estates Homeowners Assoc.*, No. 19-cv-102-AJB(WVG), 2020 WL 995862, at *9 (S.D. Cal. Mar. 2, 2020) (finding sanctions appropriate where the plaintiff settled case in a settlement conference, but manipulated and hijacked the settlement process by, *inter alia*, quibbling over immaterial terms and refusing to sign a written settlement agreement), *adopted*, 2020 WL 5757965, at *5 (S.D. Cal. Sept. 28, 2020); *Leverty & Assocs. Law Chtd. v. Exley*, No. 3:17-cv-00175-MMD-WGC, 2018 WL 6728415, at *12-13 (D. Nev. Nov. 5, 2018) (finding sanctions appropriate for refusal to sign written settlement agreement memorializing terms placed on the record at settlement conference as "conduct that perhaps most exhibits bad faith and a deliberate intention to thwart the judicial process"), *adopted*, 2019 WL 913096 (D. Nev. Feb. 22, 2019); *Onewest Bank, FSB v. Farrar*, Civ. No. 12-00108-ACK-KSC, 2013 WL 6175321, at *11 (D. Haw. Nov. 19, 2013) (finding sanctions appropriate where the defendant failed to sign settlement agreement with the terms placed on the record, as well as failing to provide timely, reasonable, and constructive comments on the draft settlement agreement); *Estate of Studnek*, 2007 WL 9724107, at *7 (finding sanctions appropriate where the parties settled case in a settlement conference because "[i]t is clear from the settlement conference transcript that the settling Defendants were aware of the terms of the agreement and assented thereto. To now argue duress or confusion without any such showing, challenge jurisdiction, and disregard an Order of the Court to retain new corporate counsel is unfair to the other parties involved in the settlement agreement"); *Armstrong v. City & Cnty. of San Francisco*, No. C 01-2611, 2004 WL 2713068, at *4 (N.D. Cal. June 14, 2004) (finding sanctions appropriate for motion to enforce settlement given that a representative of Plaintiff's counsel had acknowledged the enforceability of the settlement in open court).

[14] Another potential sanction is a monetary fine. *E.g., Slovak v. Golf Course Villas Homeowners' Assoc.*, No. 3:13-cv-00569-MMD-CLB, 2020 WL 929515, at *5 (D. Nev. Feb. 26, 2020) (citing *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995)). The Court provided notice that it was considering the imposition of a fine, Docket No. 56 at 1-2, but finds

party incurred solely because of the misconduct—or put another way, to the fees that party would not have incurred but for the bad faith." *Goodyear*, 137 S.Ct. at 1184.  This is a "but-for" test by which the movant may recover only the portion of its fees that it would not have paid but for the misconduct.  *Id.* at 1187.  In the context of a refusal to sign a written settlement agreement after its terms are placed on the record at a settlement conference, attorneys' fees would be recoverable for time expended on further discussions or negotiations with the opposing counsel regarding the refusal to sign, briefing a motion to enforce settlement, attending a hearing on a motion to enforce settlement, and briefing the request for sanctions, including preparing the documentation underlying the calculation for such request.  *See Leverty & Associates*, 2018 WL 6728415, at *13; *see also Glass v. Pfeffer*, 849 F.2d 1261, 1266 & n.3 (10th Cir. 1988) (awarding fees-on-fees with respect to inherent authority sanctions).

## B.   Analysis of Entitlement to Sanctions

The parties here dispute whether Plaintiff's conduct rises to the level required for the imposition of inherent authority sanctions.  Plaintiff argues that he did not act in bad faith because he had a subjective belief that his understanding of the two identified terms differed from the manner in which they were written.  *See, e.g.*, Docket No. 65 at 3.[15]  Defendant counters that the conduct well exceeded the required threshold of bad faith conduct.  *See, e.g.*, Docket No. 66 at 3-7.  The Court agrees with Defendant that Plaintiff's conduct is sufficiently egregious that sanctions are warranted here.

The basic factual scenario is relatively simple.  The parties appeared for an early neutral evaluation, reached a settlement, and stated the essential terms of the settlement on the record.  *See, e.g.*, Docket No. 29.  The material terms as stated on the record include confidentiality and non-admission of liability.  Docket No. 39.  Immediately after the early neutral evaluation, Plaintiff

---

that the award of attorneys' fees is a sufficient sanction.  Accordingly, the Court will not impose a monetary fine on Plaintiff in the circumstances of this case.

[15] The Court notes as a threshold matter that sanctions may be imposed under its inherent authority when the conduct at issue is bad faith <u>or</u> "tantamount to bad faith."  *See Fink*, 239 F.3d at 994.  The latter circumstance arises when, *inter alia*, the conduct is both reckless and frivolous.  *Id.*  Plaintiff makes no attempt at showing that his conduct, even if somehow not "bad faith," would not include the fatal combination of recklessness and frivolousness.

regretted his decision to settle.  Docket No. 70 at 70, 72-73; *see also* Docket No. 52 at 5.

Nonetheless, Plaintiff knew that he was bound by his decision to settle.  *See* Docket No. 70 at 73-

74.  Defense counsel thereafter forwarded a written settlement agreement to Plaintiff's counsel to

memorialize the terms.  Docket No. 50 at ¶ 2.  That draft settlement agreement included the

standard provisions for confidentiality and non-admission of liability that have been approved

repeatedly by Plaintiff's own attorney.  *Id.* at ¶ 9.  Nonetheless, Plaintiff refused to sign the written

agreement because, in the words of his attorney, "[h]e no longer wants to settle."  Evid. Hrg. Def.

Ex. 8 at 4 (NVP1-0067).  For the first time in responding to the motion to enforce, Plaintiff

contends that his refusal to sign the written settlement agreement was premised not on his admitted

desire to avoid the agreement he had entered, but rather because he had an epiphany in reading the

draft of the written settlement agreement that he had not actually understood the confidentiality

and non-admission terms.  *See* Docket No. 44 at 3-4.  Plaintiff insists unbelievably that his

epiphany was unrelated to his admitted desire to renege on the agreement to which he agreed, a

desire that predates by weeks his supposed revelation.  *See* Docket No. 70 at 73-75.  There are

many holes in Plaintiff's story.

The Court begins by noting that Plaintiff has been knowingly advancing a frivolous

argument for months.  As discussed above, Plaintiff's position is foreclosed by the Ninth Circuit's

decision in *Doi*.  On November 13, 2020, <u>before this dispute had boiled over into an actual motion</u>

<u>to enforce settlement</u>, the Court specifically identified *Doi* to Plaintiff (through his counsel)

because it was unclear whether he had considered this binding case law in continuing to refuse to

sign the settlement agreement.  Docket No. 37 at 1.  The Court provided additional time precisely

to facilitate Plaintiff's consideration of that case before proceeding further.  *Id.*  A simple perusal

of the *Doi* decision would have alerted Plaintiff to the frivolous nature of raising that argument in

subsequent motion practice.  *See* 276 F.3d at 1139.[16]  A simple perusal of the *Doi* decision would

have also alerted Plaintiff to the potential imposition of sanctions should he continue to refuse to

---

[16] The order was unexpectedly prescient in that Plaintiff at that time had not articulated his current position that the terms in the written agreement did not match his understanding of the terms as placed on the record.

sign the settlement agreement given the circumstances.  *See* 276 F.3d at 1140-41.  Rather than taking seriously the Ninth Circuit case law that governs here, Plaintiff chose to ignore it and continue recklessly barreling forward with a frivolous position that was an obvious loser.

The baseless nature of Plaintiff's legal argument is not his only problem, however, as the factual basis for his position is also faulty.  Plaintiff's testimony was convoluted, contradictory, inconsistent with the record, and wholly incredible.[17]  Before getting to the specific terms at issue, the Court notes several overarching flaws in Plaintiff's testimony.  First, Plaintiff's testimony is plainly inconsistent with the representations of his attorney.  While Plaintiff now asks the Court to believe that he refused to sign the written settlement agreement because he had some confusion as to the meaning of the confidentiality and non-admission provisions at the time of the early neutral evaluation, his attorney has sung a markedly different tune.  On November 12, 2020, Plaintiff's counsel stated unequivocally that:  "He no longer wants to settle.  I explained the possible outcomes of that decision (including that you'd likely file a Motion to Enforce), and he's adamant that he does not want to settle and will not sign the agreement." Evid. Hrg. Def. Ex. 8 at 4 (NVP1-0067).  Also on November 12, 2020, Plaintiff's counsel signed a status report representing as follows:

> On September 10, 2020[,] the parties reached a confidential resolution of the above-referenced matter. . . . A written document memorializing the parties' agreement has been exchanged; however, Plaintiff has told his counsel that despite having agreed to resolve this matter and confirmed the key terms of the agreement on the record with the Court, he no longer wishes to settle.

Docket No. 36 at 1 (emphasis added).  There is no indication from Plaintiff's counsel that a dispute existed as to the specific language of any terms in the written settlement agreement, which was impeding in any way the signing of that agreement.  Instead, Plaintiff's counsel is unambiguous that (1) a settlement agreement had been reached, the terms of which were confirmed on the record, but (2) Plaintiff no longer wanted to settle.  That Plaintiff's position now is inconsistent with the

---

[17] The Court does not attempt to catalogue herein all of the holes in Plaintiff's testimony; rather, the Court is providing only examples.

contemporaneous statements of his attorney severely undermines his credibility. *Cf. Doi*, 276 F.3d at 1139-40.

Second, Plaintiff's professed revelation that the terms in the settlement agreement as written were not reflective of his understanding at the time they were placed on the record is belied by Plaintiff's own behavior. Defendant was not informed of any concern with the two provisions now at issue until Plaintiff responded to the motion to enforce, which was months after Plaintiff indicated that he would not sign the settlement agreement. *See* Docket No. 50 at ¶ 8. That silence is particularly problematic for Plaintiff given that defense counsel provided him numerous opportunities to propose edits (including after the responsive brief was filed), but no proposed changes to these terms were presented. *See, e.g.*, *id.* at ¶¶ 10-11; Docket No. 70 at 27. Instead of attempting to negotiate the written terms to reflect Plaintiff's supposed understanding at the time the settlement was read into the record, Plaintiff simply insisted that the entire settlement be scrapped.[18] Particularly given Plaintiff's admission that he regretted agreeing to settle this case immediately after the early neutral evaluation, his behavior is indicative of a party who wanted to renege on a settlement and not of a party who wanted a written settlement agreement to reflect his understanding of the terms. *Cf. Onewest Bank*, 2013 WL 6175321, *11 (finding bad faith behavior meriting the imposition of sanctions based on, *inter alia*, "failing to provide timely, reasonable and constructive comments to the draft Settlement Agreement"). This behavior strongly undermines

---

[18] Plaintiff's attempt to explain away this conduct is not persuasive. Plaintiff contends that he was not required to negotiate the language in the written agreement because he allegedly believed that Defendant was unfair in its presentation of the written terms. *See* Docket No. 70 at 101. This argument is specious. Any belief that Defendant engaged in wrongful conduct is belied by, *inter alia*, the fact that the proposed written terms are the standard terms approved <u>by Plaintiff's counsel</u> in numerous cases. *See, e.g.*, Docket No. 50 at ¶ 9. To the extent Plaintiff himself simply refused to believe his own attorney on that issue, *see* Docket No. 70 at 103 (counsel arguing that a client may continue down a path even though "an attorney might explain to a client until they're blue in the face that this is or is not"), intentionally proceeding with blinders to the truth is assuredly not an indication that Plaintiff was proceeding in good faith. At any rate, Plaintiff had his own duty to engage in the settlement process in good faith. *See Remark Holdings, Inc. v. China Branding Grp. Ltd.*, No. 2:18-cv-00322-JAD-DJA, 2019 WL 4673183, at *2 (D. Nev. Sept. 24, 2019); *see also* Fed. R. Civ. P. 16(f)(1)(B). Plaintiff presents no legal authority that he may sidestep his own obligation to act in good faith based on an unsupported, subjective belief that the opposing party is being unfair. The Court rejects this troubling proposition. At bottom, Plaintiff is simply not credible in representing that he refused to sign the settlement agreement based on a subjective belief he purportedly held as to Defendant's post-settlement behavior.

Plaintiff's contention that he sincerely believed a settlement had been reached with different confidentiality and non-admission terms than those included in the draft of the written agreement.

Third, Plaintiff's position is premised on his supposed understanding of the nuances of the terms of the agreement at the time of the settlement being placed on the record at the early neutral evaluation, an understanding that he asserts departs from the terms as stated in the written agreement.  An obvious downfall of Plaintiff's testimony is that he elsewhere disputes having any such understanding at all:  "As it was quite an emotional moment, I remember nothing about the specifics of the agreement other than being presented two undesirable options:  Agree to 'walk away' so that Defendant would drop their [sic] plan to sue me or continue to seek justice and face considerable financial liability."  Docket No. 52 at 3 (emphasis added).  Quite obviously, Plaintiff cannot both remember nothing about the specifics of the agreement and have an understanding of the specifics of the agreement that differs from the terms as memorialized in writing.[19]  Taking such irreconcilable positions casts serious doubt as to Plaintiff's credibility.

Were these overarching defects in Plaintiff's testimony not enough, Plaintiff's testimony specific to the terms at issue are themselves unbelievable.  Take Plaintiff's testimony with respect to the confidentiality provision.  Plaintiff attests that he believed at the time of the early neutral evaluation that the confidentiality provision meant only that he "was to return any [of Defendant's] material and that [he] would not be allowed to discuss how the case was settled nor the settlement amount."  Docket No. 55 at 3.  Plaintiff attests that he believed he could discuss his "experience with The Cosmopolitan both during and after [his] employment."  *Id.*  In particular, Plaintiff indicates that he did not believe he would be "precluded from discussing the trauma inflicted on him while in Defendant's employ."  Docket No. 44 at 4 (emphasis added).  This is not believable.  To wit, Plaintiff acknowledges elsewhere that he "agreed to the non-disparagement provisions" included in the written settlement agreement and has "no intention of disparaging the Defendant."  *Id.*  The non-disparagement term to which Plaintiff explicitly states he agrees provides on its face that he cannot make any statements "that may be considered to be derogatory or harmful to the

---

[19] Plaintiff was provided an opportunity to explain the contradictory representations, but he provided evasive, nonsensical, and unsatisfactory answers.  Docket No. 70 at 95-97.

good name or reputation" of Defendant.  Docket No. 44-1 at 6.[20]  Hence, the very communications that Plaintiff states he thinks should be beyond the scope of the agreed-upon confidentiality term (*i.e.*, statements meant to share the "trauma inflicted on him while in Defendant's employ") and that purportedly formed the basis for his desire to not sign the written settlement agreement are precluded by the text of the non-disparagement term to which Plaintiff affirmatively agrees. Plaintiff is not credible in asserting that he in good faith refused to sign the settlement agreement based on a misunderstanding as to the confidentiality term.[21]

Plaintiff's position regarding the non-admission term is similarly lacking in credibility. Plaintiff's clearest articulation of his position as to this provision is as follows:

> Pursuant to the negotiations at the Early Neutral Evaluation, Plaintiff believed that the Defendant would not be making an admission of liability in this matter.  However, the written settlement agreement contained language that in essence, required Plaintiff to *agree* that Defendant would not be making an admission of liability.

Docket No. 40 at 3 (emphasis in original); *see also* Docket No. 55 at 3 (articulating objection to the language in the settlement agreement as being that it was "stating that I agreed with [Defendant] that there was no admission of wrongdoing").  Not only is the distinction being made technical

---

[20] At the evidentiary hearing, Plaintiff testified that he thought he would not run afoul of the non-disparagement clause when casting aspersions on Defendant in a manner that Plaintiff thought was truthful.  *See* Docket No. 70 at 95.  The non-disparagement clause as written and to which Plaintiff states he expressly agrees, does not allow for such statements.  Particularly given his alleged attention to detail as to the other terms in dispute, it makes little sense that Plaintiff would agree to the non-disparagement term as written if he truly believed it was meant to include a carve-out for truthful communications.

[21] Plaintiff veered off course at the evidentiary hearing, arguing that he disagreed with a separate provision requiring confidentiality with respect to information as to other employees. *See, e.g.*, Docket No. 70 at 37-63.  Plaintiff's testimony on this subject was evasive and convoluted. Plaintiff stated that he objected to such a provision because it would preclude him communicating information to a court.  *See id.* at 58-61, 63.  As defense counsel noted at the evidentiary hearing, such concerns would be misplaced for the very simple reason that settling this case results in entry of judgment and ends the need for Plaintiff to be communicating with the Court.  *See id.* at 61, 63. When asked directly what other court proceedings could exist to which such information needed to be shared, Plaintiff evaded the question.  *See id.*  Appearing to realize the baselessness of his position, Plaintiff later switched gears by indicating that his concern was actually premised on not being able to discuss matters with other people and was unrelated to discussions with a court.  *Id.* at 94 (noting that the "case wasn't moving forward I guess" before testifying that he did not have concerns about communicating confidential information to a court and, instead, was concerned about communicating with other people).  To put it mildly, shifting and inconsistent testimony (in the course of a single hearing) is not a hallmark of honesty.

and insignificant as a practical matter (*i.e.*, not one that would likely lead to refusal to sign a settlement agreement, even if true), but it is also completely inconsistent with the fact that Plaintiff already did "agree" on the Court record that Defendant would not be making an admission of liability. *See* Docket No. 39 at 3-5 (agreeing that an essential term of the settlement was that Defendant would not be making an admission of liability). Hence, the ship long ago sailed on Plaintiff agreeing that Defendant would not be admitting liability; he has already done so.[22] Plaintiff is not credible in asserting that he in good faith refused to sign the settlement agreement based on some misunderstanding as to the non-admission term.

Based on the circumstances presented, Plaintiff is not credible in representing that a misunderstanding as to the confidentiality and non-admission terms was his reason for not signing the settlement agreement. Plaintiff admitted that he immediately regretted settling the case at the early neutral evaluation, but that he understood at that time that he was bound by the agreement he had made. Docket No. 70 at 70, 72-74. When Plaintiff received the written settlement agreement weeks later, he concocted a supposed misunderstanding of two standard terms in an effort to pull off a Houdini act. He then simply refused to sign the agreement. Plaintiff continued with his feigned confusion through briefing a motion to enforce, testifying at an evidentiary hearing, and providing post-hearing briefing. Plaintiff's litigation conduct is the definition of bad faith and Defendant should not be forced to absorb the resulting attorneys' fees incurred.[23] An imposition of sanctions is warranted.

---

[22] Plaintiff elsewhere equates the non-admission provision with Plaintiff admitting Defendant's innocence. *See* Docket No. 52 at 4; *see also* Docket No. 65 at 3; Docket No. 70 at 31. Such a position is ridiculous. Plaintiff fails to provide any reasonable basis tethered to the language of the agreement to support such a concern. *See* Docket No. 70 at 32-33. That shortcoming is particularly pronounced given that Plaintiff was a senior manager in human resources who is represented in this case by counsel. *See id.* at 9. Indeed, Plaintiff eventually acknowledged at the evidentiary hearing that his purported concern may lack any basis in reality. *See id.* at 67. Plaintiff's position on this issue is just more feigned confusion.

[23] Plaintiff urges the Court to find that he was not acting in bad faith because, while he may be wrong in the positions that he has advanced, he truly held a subjective belief in those positions. *See* Docket No. 65 at 3-4; *see also* Docket No. 70 at 102-05. The Court disagrees. The record does certainly show that Plaintiff's positions are baseless, but the record also shows that Plaintiff is not credible in testifying that has actually believed those positions.

At any rate, Plaintiff's alleged belief in his positions would not render him immune from inherent authority sanctions. Sanctions are properly imposed under the Court's inherent authority

20

1    Accordingly, the Court concludes that the imposition of sanctions on Plaintiff in the form

2  of attorneys' fees is warranted.

3    **C.**    **Calculation of Fees**

4    Having determined that an award of attorneys' fees is warranted, the Court turns to the

5  calculation of those fees.  The Court determines a reasonable fee under the lodestar method by

6  multiplying the number of hours reasonably expended by a reasonable hourly rate.  *See Hensley v.*

7  *Eckerhart*, 461 U.S. 424, 433 (1983).  The lodestar figure is presumptively reasonable.

8  *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988).[24]

9    1.    Reasonable Hours

10    The touchstone in determining the hours for which attorneys' fees should be calculated is

11  whether the expenditure of time was reasonable.  *Marrocco v. Hill*, 291 F.R.D. 586, 588 (D. Nev.

12  2013).  The Court "has a great deal of discretion in determining the reasonableness of the fee and,

13  as a general rule, [an appellate court] will defer to its determination . . . regarding the

14  reasonableness of the hours claimed by the [movant]."  *Prison Legal News v. Schwarzenegger*,

15  608 F.3d 446, 453 (9th Cir. 2010) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1398 (9th Cir.

16  1992)).  The reasonableness of hours expended depends on the specific circumstances of each case.

17  *Camacho v. Bridgeport Fin'l, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008).  In reviewing the hours

18  _____

19  for conduct that is "tantamount to bad faith," which includes conduct combining recklessness and
frivolousness.  *See Fink*, 239 F.3d at 994.  Although Plaintiff acknowledges this standard, Docket

20  No. 65 at 3, he makes no effort to explain why his conduct was not tantamount to bad faith even
taking him at his word.  Even were the Court to believe that Plaintiff held these subjective beliefs

21  (which the Court does not), the Court would still conclude that his conduct was tantamount to bad
faith and would award sanctions on that basis.

22    The Court notes finally that its inherent authority is not the only basis on which to impose
sanctions.  In trying to put out the inherent authority fire blazing in front of him, Plaintiff argues

23  myopically that his supposed subjective belief defeats the imposition of sanctions no matter how
baseless his positions are.  Plaintiff fails to address why that same baseless conduct would not give

24  rise to sanctions under Rule 11 of the Federal Rules of Civil Procedure.  *See Business Guides, Inc.*
*v. Chromatic Comms. Enterps., Inc.*, 498 U.S. 533, 535 (1991) (holding that Rule 11 imposes an

25  "objective standard" of reasonableness); *see also* Fed. R. Civ. P. 11(c)(3) (courts may initiate Rule
11 proceedings on their own initiative).  There is no need to initiate Rule 11 proceedings at this

26  juncture, however, as Plaintiff's conduct is sanctionable under the Court's inherent authority.

27    [24] Adjustments to the lodestar are proper in only "rare and exceptional cases."
*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).  A

28  departure from the lodestar is not warranted in this case.

claimed, the Court may exclude hours related to overstaffing, duplication, and excessiveness, or that are otherwise unnecessary. *See, e.g.*, *Hensley*, 461 U.S. at 433.

Defendant is seeking to recover for 28.3 hours worked by Lisa McClane, 8.6 hours worked by Daniel Aquino, and 15.6 hours worked by Holly Walker. *See* Docket No. 66 at 9-10. Plaintiff raises two arguments as to the hours worked by defense counsel, neither of which is persuasive.

First, Plaintiff faults Ms. McClane for expending 0.1 hours reviewing an order on a stipulation. Docket No. 65 at 9. It is not unreasonable for an attorney to review an order and the 0.1 time increment is the lowest possible charge. The Court finds the expenditure of that time to be reasonable.

Second, Plaintiff faults Ms. McClane and Ms. Walker for time incurred in exploring the potential basis for a counterclaim against Plaintiff in the event the settlement was not enforced. *Id.* at 9. Neither party identifies case law on the issue. The Court agrees with Defendant that such time is recoverable. A reasonably prudent lawyer would be expected to research the basis of a potential counterclaim in the circumstances of this case once Plaintiff made clear that he was refusing to finalize the agreed-upon settlement. *Cf. Crusher Designs, LLC v. Atlas Copco Powercrusher GmbH*, No. 2:14-cv-01267-GMN-NJK, 2015 WL 6163443, at *3 (D. Nev. Oct. 20, 2015) (addressing recoverability for hours spent pre-litigation in developing case). Moreover, this time was expended directly as a result of Plaintiff's bad faith refusal to sign the settlement agreement. *See Goodyear*, 137 S.Ct. at 1184. Hence, the Court agrees with Defendant that this time is compensable here.[25]

In addition, the Court has otherwise reviewed the billing records submitted and finds in its own review that the time expended by defense counsel was reasonable. Accordingly, all of the hours identified will be included in the lodestar calculation.

## 2.   Reasonable Hourly Rates

Having determined the hours reasonably expended by counsel, the Court turns to the hourly rate with which to calculate the lodestar. The party seeking an award of attorneys' fees bears the

---

[25] Plaintiff also identified what appears to be a mathematical error in a billing entry for Ms. Walker. Docket No. 65 at 9-10. Defendant corrected that error in reply. *See* Docket No. 66 at 10.

burden of establishing the reasonableness of the hourly rates requested.  *Camacho*, 523 F.3d at 980.  "To inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984).  "Affidavits of the [movant's] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the [movant's] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The Court may also rely on its own familiarity with the rates in the community to analyze those sought in the pending case. *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Plaintiff does not dispute the reasonableness of the $380 hourly rate sought for Ms. McClane.  *See* Docket No. 65 at 6.  Given Ms. McClane's 15 years of experience, as well as her skill and reputation, the Court agrees that an hourly rate of $380 is appropriate.

Plaintiff disputes the reasonableness of the hourly rates sought for Mr. Aquino and Ms. Walker.  *See id.* at 6-7.  Mr. Aquino is a senior associate who graduated from Hastings law school in 2012 and was previously a partner at a local law firm.  *See* Docket No. 66 at 16.  Defendant seeks an hourly rate of $300 for Mr. Aquino.  Ms. Walker graduated from Boyd law school in 2014, obtained three clerkships, and previously worked at two local law firms.  *See id.* at 16-17. Defendant seeks an hourly rate of $280 for Ms. Walker.  The Court agrees with Plaintiff that the hourly rates sought are somewhat excessive within this District.  The Court finds that an hourly rate of $250 is appropriate for Mr. Aquino and an hourly rate of $225 is appropriate for Ms. Walker.  *See Capital One, N.A. v. SFR Invs. Pool 1, LLC*, No. 2:17-cv-00604-RFB-DJA, 2019 WL 9100174, at *4, 7 (D. Nev. Sept. 24, 2019) (awarding hourly rates of $250 and $200 for associates with eight and five years of experience); *see also Sinanyan v. Luxury Suites Int'l, LLC*, No. 2:15-cv-00225-GMN-VCF, 2016 WL 4394484, at *4 & n.4 (D. Nev. Aug. 17, 2016) (collecting cases).

Accordingly, the lodestar will be calculated with an hourly rate of $380 for Ms. McClane's time, an hourly rate of $250 for Mr. Aquino's time, and an hourly rate of $225 for Ms. Walker's time.

### 3.    Lodestar

In light of the above, the Court calculates the lodestar as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Lisa McClane | 28.3 | $380 | $10,754 |
| Daniel Aquino | 8.6 | $250 | $2,150 |
| Holly Walker | 15.6 | $225 | $3,510 |

Accordingly, Plaintiff will be required to pay attorneys' fees in the amount of $16,414.

## V.    CONCLUSION

For the reasons discussed in detail above, the Court hereby rules as follows:

(1)      The Court **GRANTS** in part and **DENIES** in part the motion to seal (Docket No. 40) as supplemented.  The Clerk's Office is **INSTRUCTED** to unseal Docket Nos. 49, 51, and 54.  The Clerk's Office is **INSTRUCTED** to otherwise leave sealed the subject documents.  Counsel must jointly file, no later than August 2, 2021, redacted versions of the subject documents to account for the ruling made herein.

(2)      The undersigned **RECOMMENDS** that Defendant's motion to enforce settlement (Docket No. 41) be **GRANTED**.

(3)      The Court **GRANTS** in part and **DENIES** in part Defendant's motion for sanctions (Docket Nos. 41, 64).  Plaintiff must pay Defendant its attorneys' fees in the amount of $16,414 by September 20, 2021.

IT IS SO ORDERED.

Dated: July 20, 2021

_____
Nancy J. Koppe
United States Magistrate Judge

## **NOTICE**

This report and recommendation is submitted to the United States District Judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1).   A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation.  Local Rule IB 3-2(a).  Failure to file a timely objection may waive the right to appeal the district court's order.  *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).